The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Okay, good morning everyone. The first argued case this morning is number 19-2246 M2M Solutions LLC v. Amazon.com. Mr. Henschke, please proceed. Good morning. May it please the court, I'm Mark Henschke on behalf of the patent owner and appellant M2M Solutions. Prior to Amazon completely reversing its claim construction position at the oral hearing below, everyone agreed about the nature of the claimed embodiment that M2M's patents are directed to. We have a server that is autonomously managing consumer device assets over wireless networks by making beneficial modifications to those assets. The server accomplishes and effectuates its managing by choosing the particular wireless management instructions to send that will cause these desired asset modifications to occur. Here in the claimed embodiment, the server initially receives consumer usage information from a device asset which informs the server about the manner in which the consumer has learned from processing the received consumer usage information. The server is able to autonomously make decisions about what helpful modifications it can make to the asset and what particular management instructions would be needed to effectuate those particular modifications. So this type of embodiment is expressly captured in the management instructions claim elements that at issue here on appeal. For example, in the 358 patent, the claim elements explicitly require that the server's managing needs to be based upon the results of its processing of the received consumer usage information. In other words, the server's managing needs to be substantively predicated on the outcome of its processing of its... Counsel, this is Judge Stoll. I'm just looking at that very claim language you're referring to and I'm wondering how you deal with the following language which you didn't mention which says it's managing by sending communications. So how do you respond to that where it's not saying it seems that the managing is by sending based on the results of the consumer usage information? Well, the managing is occurring by virtue of the management instructions. Obviously, they need to be sent in a transmission to the device asset but the key to accomplishing the managing is not merely the sending of the transmission but rather the server's choice of what management instructions to include within that transmission. What about... Let me ask you a different question. I can see your position with the 359 patent claims. There, the plain language of the claim seemed to support your position more. It says management instructions that cause the stored data content files of one or more assets to be automatically modified based upon the results of having processed at least some of the received consumer usage information. That plain language is, in my view, consistent with your claim infrastructure. One concern I have, I don't see that same kind of claim language in the other patents. That's one concern. The other concern I have is, let's say I agree with you for the 359 patent. How am I supposed to treat your contention that all the claims have the same meaning? Is that a waiver on your part? The idea that all the same claim elements have the same scope and the petition, which we largely agree with. Certainly, you pointed to the 359 patent where the language is the most expressive of all. It's equally true that in the 358 patent, if the managing itself has to be substantively predicated on processing, there's no way that that could occur unless the management instructions, which are the sole way through which the managing is effectuated, also would need to be based upon the processing. Okay. I understand your position, but let's just say hypothetically that I think you've got a stronger position for the 359 patent, and I don't agree with you on the 358. What do I do with your agreement and suggestion that all the claims have the same meaning? Is that a waiver? Well, I don't believe it is, Your Honor. That was the position taken in the petition by Amazon. We haven't disagreed with that, but if the court feels that the individual patents have a different scope and wants to treat them differently, then obviously the court has the prerogative and indeed the duty to do that. So, no, I don't see any sort of waiver of any point there. Mr. Hatchee, this is Judge Lynn. You're saying you don't see any waiver, but you just said a minute ago that this was Amazon's position, and you agree with it. I agree with the idea that the claim elements in all three of these patents should be read together and should be informative of each other. And if you're trying to figure out what the 358 patent means, the language in the 359 is helpful and instructive and vice versa. And finally, we haven't talked about the 307 patent, but there, again, it uses communicate language, yes, but the question is, what is it that needs to be communicated? And what needs to be communicated is the particular management instructions themselves. It's the choice of what management instructions to communicate that needs to be based on the processing. It's not merely the transmission that could contain management instructions completely unrelated to the processing, and that would result in modifications to the asset that were completely unrelated to the processing. Counselor? Yes. This is Judge Stoll again. I see your statement about the claims having the same meaning on page eight of your blue brief. And it says, M2M agrees with Amazon's further argument that notwithstanding some minor and consequential variations in the phrasing, the management instructions claim elements across all three challenge patents recite effectively identical subject matter and therefore should likewise be accorded the same claim scope as one another. Is that what I am to understand to be your position? I mean, it's right in your brief. So that's what I understand to be that language I'm looking at to see whether you've waived an argument that these claims have different meanings. We have taken the position that all three claim elements and all three patents have the same scope and should be interpreted the same way. If the court disagrees with that, you're welcome to pick and choose which patents survive and which don't. But clearly, we believe that all of them should be equal. Now, in contrast to the management instructions needing to be based upon the results of the processing of the consumer usage information, the board's erroneous construction is that the management instructions claim elements, it's merely the server's determination to send a transmission that would need to be based on the processing of consumer usage information. So the board is reading the claims management instructions themselves as being can be completely unrelated in any respect to the server's processing of consumer usage information and thus that the modifications they would cause to the assets can be completely unrelated to the server's processing. And that's exactly how the board read the claims on Clova. Now, Amazon's trying to say that this erroneous construction is an obligatory plain language reading of the claim despite the fact that Amazon itself has construed the claims as requiring the exact opposite at all previous times and agreed with our construction. Nowhere do the claims state in plain language or otherwise that the server's determination merely to send a transmission is what is based on its processing of consumer usage information. Rather, the claims explicitly state that the server's managing is what needs to be so based. Now, it's true that the server manages by way of management instructions that are transmitted but the key to accomplishing the recited type of managing is not merely the server's determination to send a transmission but rather its decision about what particular management instructions would need to be included within the transmission so as to bring about the desired asset modifications. What Amazon now admits is that the board's erroneous construction equates to a trigger interpretation of the claim language. In other words, the board's construction allows that so long as the server's managing is merely causally triggered by its processing of consumer usage information, that's good enough and there's no need for the nature or content of the managing to be related in any way to the processing. But quite to the contrary, what the claim language and the plain language says is that the server's managing must be substantively predicated on the outcome of the processing. It must be, quote, based upon the results of the processing. So, in short, the board has badly misread these claim elements as merely requiring that the server's managing occur as a result of having performed processing when, in fact, they quite differently require that the server's managing be based upon the results of the recited processing. Mr. Henke, this is Judge Stoll. I want to ask you a question about your alleged APA and due process violation. You cite three cases primarily, I think, Dell, Nuvasiv, and Americhem. But in none of these cases did the board provide an opportunity for additional briefing. Indeed, in each case, this court remanded to the board to give the parties an opportunity to respond. So, here, before you get to us, you've already had an opportunity to have briefing on this claim construction issue and present your position to the board. So, what is your claim for relief now that you've already received the relief that would be available to you under Dell, Nuvasiv, and Americhem? Well, I'm going to argue later in rebuttal that the correct remedy here is reversal for other reasons. But with respect to remand on the APA, look, the fact that the APA violations were committed is clear from the briefing. The question comes down to did the board somehow remedy it so that we don't deserve another chance. We would say that the board does not remedy its own APA violations unless the board were to at least return the victimized party back to the same position it would have been in prior to the APA violations having occurred so that no prejudice ends up resulting. Would that mean that the board would have had to rule in your favor? That would mean that the board would have had to allow argument where the burden of proof was properly placed, that it would have had to allow a sufficient amount of argument, that it would have had to allow argument to be supported by expert testimony, which it expressly forbid. The board did not return the parties to where they were. It shifted the burden of proof to the patent owner to have to disprove the board's erroneous construction, and it only allowed a seven-page brief forbidding expert testimony to be submitted in support of the positions. So clearly the board didn't do anywhere near enough to correct and return the parties back to where they would have been. And with that, I'll reserve for rebuttal where I'd like to the remedy of reversal. Okay. Is the panel, as far as the argument in chief is concerned, is there anything else that you want to raise at this stage with Ms. Stansky? No, thank you. Okay. All right. Then let's hear from the other side. For amazon.com, Ms. McCullough. Thank you, your honor. Good morning, and may it please the court. I'd like to start with merits of the board's claim construction. As I believe Judge Stoll noted, both the plain language of the 007 and the 358 patent is straightforward, and it indicates that the server's communication of management instructions, or in the case of the 358 patent, the server's managing by sending communications, continuing management instructions, be based on the results of having processed some of this received consumer usage information. We also understand the 359 claim language to be consistent with this interpretation, and as the court noted, M2M has conceded that all three sets of claims have a similar claim scope. In the 359 patent, the claims recite that the transmitters are configured to send communications containing management instructions based on the results of processing some of this consumer usage information. So we do think that that's a consistent plain language interpretation with the other two patents. To the extent there is ambiguity, though, we know that we looked at the specification, as the board did here, and the specification, as the board noted, identifies a number of examples, two that the board discussed in detail, where the specification describes management instructions that are sent based on processing consumer usage information, but whose content is not described as being based on the received consumer usage information. The board discussed the security example in column four of the patents, where the server, in response to simply receiving a phone message, sends communications sufficient to disable device functionality or lock doors. Now, this embodiment does not... Ms. McCullough? This is Judge Stoll. You kind of cropped the claim language when you went through the plain claim language, and that bothers me. It says, the claim actually says, containing management instructions, and you said management instructions, you said sending management instructions based upon the results, but it actually says, management instructions that cause the stored data content files of one or more assets to be automatically modified based upon the results. That doesn't say the communications are based upon the results. It says the management instructions that cause the stored data content files of one or more assets to be automatically modified based upon the results. How can you say that based upon the results doesn't modify the management instructions? Yes, Your Honor. That's because the interim clause that I did omit, just for brevity, I suppose, more than anything else, qualifies management instructions, and that's in all of the different claims. Management instructions is already defined to have a characteristic in each of these claims. Why can't management instructions have two characteristics? That's normal English usage of language. Things can have more than one characteristic based on how close they are. This based upon language is closer to the management instructions than it is to any other term, unlike the other claims. We do concede that, as the word found, there is more ambiguity, arguable ambiguity, in the 359 patent. This is not there in the 358 and 307 patents. As you noted, M2M has conceded that these three sets of claims have similar scope. But to the extent there is ambiguity, we look to the specification. There we see that there are not examples that M2M has been able to cite where the management instructions are generated or the determination to include management instructions in this transmission is made based on the received consumer usage information. The single portion of the detailed description that M2M cites, this pull-down menu embodiment, it doesn't describe management instructions explicitly at all. M2M admitted this to the board at Appendix 2970 and 71. Does it describe the communications at all? It does not, Your Honor. Yeah. M2M makes inferences that may or may not be true, and there's no record support for those the board noted, are a number of examples where the management instructions are sent, are triggered. We do use that shorthand based on the processing of this consumer usage information. We have that security embodiment. We also have the video recorder embodiment in Column 22 of the specification. Here, again, the server is described as receiving a simple message. That's a quote from the spec from a consumer device. Upon receiving that simple message, the server creates a complex data message that causes a video recorder to record a specific program. There's no description in the specification of how the server generates that complex data message, and there's no description of that complex data message, including content or including instructions that are specifically selected based on the received simple message, which could be a ping or a yes. Was there an issue when you say there's no... I was thinking about that in terms of the description and the specification, but that wasn't an issue, was it, before the board in terms of, say, enablement or description? Is that accurate? The issue of enablement was not an issue that the board considered, Your Honor, but the issue here that the board was considering was what does the specification describe as being management instructions? It did look at a number of examples of management instructions in this video recorder and security embodiments, which, by the way, were identified in the petition at Appendix 372 as examples of management instructions. These are two examples where the server sends communications containing management instructions based on receiving consumer usage information and processing that consumer usage information, but where the management instructions are not information. Again, M2M has not been able to point to anything in the specification to the contrary. Yes? This is Judge Lynn. If the act of communicating is based on the results of received consumer usage information, on what are the management instructions based? The claims do not specify what the management instructions must be based on. They specify what the management instructions do. They specify that the management instructions cause the stored data content files of assets to be automatically modified. Amazon actually proposed a construction below that defined management instructions as being commands for a device to perform particular actions. M2M argued that no construction was necessary for the term management instructions. But it seems to me it wouldn't make any sense to have a system where, you know, there are certain things going on and the act of communicating is triggered to receiving certain information, and yet the management instructions are unrelated to that. It's like they're two separate things going on at the same time and they're not connected with one another. What am I missing? I would say two things, Your Honor. First, the specification provides examples of exactly this. I think the security example is a good one. The only thing that the server is described as receiving is a phone message. There is no description of what that phone message must contain. It seems most likely that it is simply an alert, that the server is configured to interpret a received phone message as being an alert. And in response to that, the server is previously configured to lock down all doors in an area or to disable the functionality of devices in an area. There are implementations where this makes sense. But more fundamentally, Your Honor, the claims simply do not restrict the management instructions or the sending of management instructions in this way. There is no recitation in the claims on how these management instructions are generated or on the required content of the management instructions. What is recited is that these management instructions must cause stored data content files of these device assets to be automatically modified. Now, in many cases, Your Honor's hypothetical would make sense. The phrase following that, Ms. McCullough, there's that phrase following it, though, that says based upon the results, right? I was reading from the 007. Oh, okay. All right. Okay. I'm with you then. Sorry. My apologies, Your Honor. There are certainly examples in which that implementation would make sense, but the claims do not require it, Your Honor. And the specification provides alternate examples. But the 359 claim, that one's different, right? The 359 claim, yes, Your Honor. It goes on to recite based upon automatically modified, based upon the results of having processed at least some of the received consumer usage information. Again, we believe, and the board noted, that conflicting interpretations of that language make sense. But again, when you look to the specification... I understand. Now, say I disagree with you on that. Say I disagree with you. What is the result? And what other arguments do you have? I've already mentioned waiver, but do you also have another argument based on substantial evidence? Well, in terms of the construction being correct, we do believe that M2M has waived the argument that the two 007 and 358 claims that do have the clear plain language are different in scope. And so the 359 under M2M's concession would need to be construed appropriately with his other two claims. If Your Honor determines that the claim construction is incorrect, we have argued that, as the board noted, substantial evidence still supports a finding of obviousness based on CLOBA's disclosure, even on that alternative claim construction. I thought I heard a drop. On that alternative argument, Your Honor, M2M argues that the construction should have been that these communicate terms are interpreted as the server's determination to include the claim to management instructions within the transmission as what needs to be based on the results of processing some consumer usage information. And the board found that CLOBA still disclosed this limitation, even under M2M's construction, based on that one-up and one-down transmission that CLOBA discloses. CLOBA teaches that the content of this one-down transmission, which includes what M2M concedes are management instructions, these delta instructions, that that content is selected based on all of the received content in the one-up transmission, and that includes what M2M does not appeal this finding, that the delta instructions are not created or transmitted as part of a separate process from the rest of the synchronization information. It is all one synchronization process. It's all one transmission sent down from the server to the device, and that transmission is compiled and sent based on processing everything that's received from the device in that one-up transmission. And so the board's finding that even under M2M's construction, the CLOBA prior art reference disclosed this limitation that is supported by substantial evidence, and we do maintain that's an alternative basis for affirmance in this case, Your Honor. I'd like to briefly address, if there are not additional questions on claim construction or the alternative affirmance ground, M2M's arguments on an APA violation. Thank you, Your Honor. The APA requires an opportunity to be heard and notice regarding an issue. Here, the APA issue to be decided is whether M2M received this opportunity to be heard on the contested claim construction issue, and M2M did. The board found that M2M had notice based on Amazon's treatment of the communicate terms in the petition, and at the very least, this issue was front and center during oral argument, where both M2M and Amazon were questioned by the board regarding this claim construction issue. M2M then argued its view of the claim construction landscape and the request for a hearing, which the board considered, and M2M then received the opportunity to submit a brief specifically focused on this claim construction issue. Now, M2M makes only two arguments, really, as to why this was not under the APA. First, M2M argues that the board improperly shifted the burden of proof. That was incorrect. The board said that the burden of modifying the final written decision was on the challenger of that decision, M2M, and that's expressly stated by 37 CFR 4271. For claim construction, the board did a full de novo analysis, where it started with the plain language of the claims, it then considered the specification, and then it considered M2M's So, the board performed a full and fair claim construction analysis that did not shift the burden of proof to M2M. It simply noted that the burden of modifying the final written decision was on the challenger of that decision. Now, M2M argues also that expert testimony or additional pages would have been required to fulfill the APA obligations, but M2M never asked for expert testimony, and it never asked for more pages. And M2M, here in its briefing, at page 47 of the opening brief, admits that here, the intrinsic record fully governs the proper construction of a term. There was no technological language in the claim terms being construed that the board would have required expert testimony on. And again, when M2M did not seek expert testimony, it was de facto a violation of the APA. If the board has no further questions on the APA violation, we would simply ask that the board's obvious misdetermination be affirmed. Okay, thank you. Anything else for Ms. McCullough? No, thank you. Okay, thank you. In that case, we'll hear a rebuttal from Mr. Hedgeski. Thank you. In terms of the APA violations, the board itself, under its own reasoning, concluded that the 359 patent, in particular, supports multiple conflicting ordinary meanings, and then despite concluding that, never allowed M2M to use any supporting expert testimony. That is not remedying the APA violation. That's not putting the parties back into a fair position. I'm very surprised that Amazon would draw attention to the only two specification passages that the board relied upon in support of its claim construction. M2M addresses these at blue brief 60 to 61 and gray brief 24 to 25. Neither of the two specifications that the board relied on even relate to consumer usage information at all. They're not even relevant embodiments to the court's construction. And secondly, it's clear there that the management instructions would need to be based on the information that the server had received. You have a security alarm, and someone's asking the server to shut down particular doors and devices within the building, and the server sends a management instruction to shut down those particular doors. It wouldn't have known to do that unless it had based the instruction on the information it received. And with a VCR machine, someone's requesting the server to record a particular television program, and the server sends an instruction telling the VCR to record a particular program. It wouldn't have known what program to tell the VCR to record unless it had based that instruction on the information it had received. With respect to... I think this is a very important point. I think the proper remedy here is outright reversal, and that's because the board went on and made an alternative obviousness finding under M2M's correct claim construction. By the way, the same construction that Amazon advocated at all times in all places prior to the oral hearing. And if we look at the appendix at page 88 to 89, we see the board's alternative obviousness finding under M2M's correct construction. The board very clearly said here what needs to be proved is that the Delta instructions in Clova that the server is deciding to send those and include those particular instructions in the transmission based on its processing of Amazon's examples of consumer usage information, the figure 12 and figure 17 consumer usage information. That's what needs to be proven. But at appendix 89, you'll see that the only two specification passages cited in support of that proposition, 8, 7 to 19, and 21 through 21, are completely irrelevant and unrelated to proving that proposition. That's the only evidence the board cited in support of that conclusion. Not only is it not substantial evidence, it's not any evidence at all. And therefore, the board made a conclusion under the correct claim construction, which is unsupported by substantial evidence. That requires outright reversal, not remand as this court might do under an APA violation situation. Okay, thank you. Does the panel have any more questions for Mr. Henschke? No, thank you. Okay, thank you. Thank you to counsel. The case is taken under submission.